SEALED



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel | § | |
| GERALD BRAZELL, SARA JAMAICA | § | |
| MOERS, GRANT GODFREY, SHANNON | § | |
| KOWACICH, DENISE GEE, LISA | § | |
| MICHELLE WILSON, MARGARITE L. | § | |
| BURELL, JEFFREY GRANGER, and | § | |
| AMY SIMON, | § | |
| Plaintiffs, | § | |
|  | § | |
| VS. | § | CIVIL ACTION NO. 3:05-CV-0319-N |
|  | § | (FILED UNDER SEAL) |
| ALTA COLLEGES INC., | § | |
| ELBERT, INC. d/b/a WESTWOOD | § | |
| COLLEGE- FT. WORTH, TRAV | § | |
| CORPORATION d/b/a WESTWOOD | § | |
| COLLEGE DENVER NORTH and/or | § | |
| WESTWOOD COLLEGE HOUSTON | § | |
| SOUTH, EL NELL INC. d/b/a | § | |
| WESTWOOD COLLEGE-DALLAS | § | |
| Defendants. | § | |

### THIRD AMENDED FALSE CLAIMS COMPLAINT

TO THE HONORABLE COURT:

NOW COME Plaintiff UNITED STATES OF AMERICA and Relators GERALD

BRAZELL, SARA JAMAICA MOERS, GRANT GODFREY, SHANNON KOWACICH, DENISE

GEE, LISA MICHELLE WILSON, MARGARITE L. BURELL, JEFFREY GRANGER and AMY

SIMON, who for their complaint state as follows:

## I. INTRODUCTION

1.     This is civil action for damages and civil penalties brought by Plaintiffs pursuant to

31 U.S.C. §§ 3729, *et seq.* pertaining to false and/or fraudulent claims which the Defendants

submitted or caused to be submitted to the United States Government.  Defendants are one of the

---

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                                    **PAGE 1**

largest recipients of funds from the United States Department of Education, through the Higher Education Act ("HEA").

## II. THE PARTIES

### A.     Plaintiff

2.      Plaintiff is the United States of America on whose behalf Relators bring this action. The United States of America is here named a plaintiff because funds of the United States of America ("Federal funds") were and are awarded to Defendants, pursuant to the HEA, Title IV, as a result of the false claims as alleged in this Complaint.

### B.     Relators

3.      Relator Gerald Brazell ("Relator Brazell") is a resident of Tarrant County, Texas. He was employed as an Admission Representative for Defendants from June 2002 through December 2004 and worked at the Houston and Ft. Worth campuses.

4.      Relator Sara Jamaica Moers ("Relator Moers") is a resident of Dallas County, Texas. She was employed as financial Aid Advisor for Defendants from August 2003 through August 2004 and worked at the Fort Worth Campus.

5.      Relator Grant Godfrey ("Relator Godfrey") is a resident of Dallas County, Texas. He was employed as an Admission Representative for Defendants from September of 2002 through the present and works at the Dallas campus.

6.      Relator Shannon Kowacich ("Relator Kowacich") is a resident of Dallas County, Texas. She was employed as a Field  Admission Representative from January 2004-October 2004 at the Dallas, Fort Worth and Denver North campus. Plaintiff Shannon Kowacich was  a campus

admission representative for Defendants from October 2004 through the present at the Dallas campus.

7.    Relator Denise Gee ("Relator Gee") is a resident of Dallas County, Texas. She was employed as an Admission Representative for Defendants from August 2004 through January 7, 2005 at the Fort Worth campus.

8.    Relator Lisa Michelle Wilson ("Relator Wilson") is a resident of Tarrant County, Texas. She was employed as a Field Admission Representative for Fort Worth and Denver North campuses from April 2004 through September 2004. From September 2004 through December 2004, she was a campus admission representative at the Ft. Worth campus.

9.    Relator Margarite L. Burell ("Relator Burell") is a resident of Tarrant County, Texas. She was employed as an Admission Representative for Defendants from November 2003 through December 2004 at the Ft. Worth campus.

10.    Relator Jeffrey Granger ("Relator Granger") is a resident of Tarrant County, Texas. He was employed as an Admission Representative for Defendants from October 2001 though September 2004 at the Ft. Worth campus.

11.    Relator Amy Simon ("Relator Simon") is a resident of Tarrant County, Texas. She was employed as an Admission Representative for Defendants from July 2002 through January 14, 2005 at the Ft. Worth campus.

**C.    Defendants**

12.    Defendant Alta Colleges Inc. is a Delaware Corporation and may be served through its registered agent Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 3**

13.     Defendant Elbert, Inc. d/b/a Westwood College-Ft. Worth is a Colorado Corporation doing business in Texas and may be served through its registered agent CT Corporation System, 350 N. St. Paul St., Dallas, TX 75201.

14.     Defendant Trav Corporation d/b/a Westwood College Denver North and/or Westwood College Houston South is a Colorado Corporation doing business in Texas and may be served through its registered agent CT Corporation System, 350 N. St. Paul St., Dallas, TX 75201.

15.     Defendant El Nell Inc. d/b/a Westwood College-Dallas is a Colorado Corporation doing business in Texas and may be served through its registered agent CT Corporation System, 350 N. St. Paul St., Dallas, TX 75201.

16.     Defendants are referred to collectively as "Defendants."

### III. JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 *et seq.* Further, this case arises from the wrongful conduct of the Defendants incident to obtaining funds from the United States of Department of Education pursuant to the Higher Education Act, Title IV.

18.     This Court has in personam jurisdiction over the Defendants under 31 U.S.C. § 3732(a), which authorizes nationwide service of process.

19.     This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C § 3732(a) which provides that any action under this  section  may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by 31 U.S.C. §§ 3729, *et seq.* occurred.

20.    Venue is proper in this district because Defendants can be found in, reside in, and/or transact business in this district and because some of the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.  Venue is proper in the Northern District of Texas because Defendants maintain and operate their Dallas campus within this District.

### III. FACTUAL ALLEGATIONS

### A. BACKGROUND

21.    Defendant Alta Colleges, Inc., ("Alta") is a private for profit institution.  Alta owns and operates various college campuses located in Texas, Colorado, California, Illinois, Virginia, and Georgia, which award associate degrees.  Elbert, Inc. d/b/a/ Westwood College  is an entity which is a  wholly owned subsidiary of Alta Colleges, Inc.  Trav Corporation d/b/a Westwood College Denver North and/or Westwood College Houston South is an entity which is a wholly owned subsidiary of Alta Colleges, Inc.  El Nell, Inc. d/b/a Westwood College – Dallas is an entity which is a wholly owned subsidiary of Alta Colleges, Inc.

22.    Defendants had to apply for and receive a Certificate of Authority issued by the Texas Workforce Commission (TWC) in order to operate a career school in Texas. TWC exercises jurisdiction and control of the system of career schools and colleges and enforces minimum standards for approval of career schools and colleges pursuant to Chapter 132 of the Texas Education Code. TWC certifies the names of those career schools and colleges that meet the requirements for a certificate of approval.

24.    In addition, the Texas Higher Education Coordinating Board ("THECB") must approve the degree programs to be offered by career schools and colleges such as Defendants. In order to be approved for a degree program, Defendants certified to the THECB numerous criteria, such as (1) the program satisfies all requirements of the relevant licensing authorities and (2) that

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                      **PAGE 5**

there is a documented need for the proposed program. The Defendants also certified that it had satisfied all applicable requirements contained in the Guidelines for Instructional Programs in Workforce Education and Chapter 12 of the Coordination Board Rules. (See attached Exhibit "A" — Statement of Assurances). Defendants also provided certain documents to the state agencies such as curriculum and job placement statistics.

25.    Alta Colleges, Inc. sought and obtained eligibility to participate in the Federal Student Aid (FSA) programs of the United States Government as a proprietary institution of higher education. To participate in federal financial aid programs, Defendants had to enter into a written program participation agreement (PPA) with the Secretary of the United States Department of Education. The PPA conditions the initial and continued participation of an eligible institution in any Title IV, HEA program upon compliance with the provisions of this part, the individual program regulations, and any additional conditions specified in the program participation agreement that the Secretary requires the institution to meet. United States Code Title 20, Ch. 28 § 1094, lays out numerous criteria that the institution must be in compliance with in order to participate in the Title IV program. These criteria include truthful job statistics, relevant State licensing requirements of the State in which such institution is located for any job the course of instruction is designed to prepare such prospective students. The criteria in § 1094 also requires applicant schools to provide training for gainful employment in a recognized occupation and include certain requirements for instructional time. Finally, Defendants had to ensure the U.S. Department of Education ("DOE") that its programs are approved by the relevant state agencies before it was entitled to receive any Title IV funding from the DOE.

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 6**

26.     HEA, Title IV, prohibits colleges and universities from providing "any commission, bonus or other incentive payment . . ." to recruiters based on recruiting activities. HEA, §§ 487(a) and 487(a)(20). The statutory ban was enacted 1992 amid reports of numerous institutions enrolling unqualified students, in order to receive federal student-aid funds from the United States Government. The statutory incentive compensation ban is a core prerequisite for an educational institution's eligibility to request and receive Title IV funds. This ban was enacted in order to prevent colleges and universities from signing up unqualified students who will derive little benefit from the subsidy and were likely to be unable or unwilling to repay federally guaranteed loans

27.     In order to award FSA program funds to students, Defendants are required to ensure that the program is eligible, make certain that the program is included under the notice of accreditation from a nationally recognized accrediting agency and make certain that it is authorized by the appropriate state agency to offer the program. (34 C.F.R. Section 666.8).

## B. **RELATORS' AND DEFENDANTS' SUPERVISORS' INVOLVEMENT**

28.     Relators were instructed by Defendants to *"sell"* an interior design program. The Relators were also instructed to tell students that these programs would make them eligible to become certified and licensed as interior designers. These statements were blatantly false. Defendants were not accredited in these programs and graduates of these programs were not eligible to obtain licenses. Students attended the programs and secured federal financing to obtain the degree program, then were not able to obtain the proper certifications to become employed in those fields because Defendants' programs were not properly accredited. Attached to this petition is Exhibit "B" which is a letter from the Texas State Board of Architectural Examiners stating that students from Defendants' school are not able to become certified and licensed in the field of interior design.

29.     Relators Gerald Braze11 and Amy Simon were instructed to "sell" the schools interior design program. They were instructed to tell the applicants that the program was "certified" and that

upon graduation, they would be eligible to obtain certifications in interior design and that they could immediately begin work designing commercial and residential buildings.

30.     On or about March 15, 2004, the Fort Worth school's Executive Director, Kelly Coates, and its Director of Admissions, Lisa Hecht, called a meeting of the admissions representatives on the Fort Worth campus. At the meeting, Kelly Coates infoimed admissions representatives that the interior design program did not meet any certification requirements. Defendants did not change the program, but rather renamed it "CAD with Interior Finishes." Relators were told to continue selling the program as if the enrollees would be eligible for certification upon graduation.

31.     Relator Wallace, as Executive Assistant to Kelly Coates, attended staff meetings for the purpose of taking minutes. At one such meeting. Coates was asked by Lisa Hecht, the Director of Admissions, what to do now that they were aware the interior design program was not certified. Mr. Coates' response was to "keep selling it like you have been."

32.     At an administrative meeting attended by both Relator Wallace and Kelly Coates, Coates boasted that the diploma for the interior design program was not "worth the paper it was written on," yet he advised all those present that they could continue to sell the program to students with no changes.

33.     Lisa Hecht, and Dave Phillips, the Regional Director of Admissions, supervised the Relators in the functions of their jobs. These supervisors put enormous pressure on the Relators to recruit students and "fill seats". These supervisors were aware of the tactics employed by the Relators and encouraged their practice.

34.     Lisa Hecht and Dave Phillips both encouraged and sanctioned the conduct that is described in this petition. The goal of the Defendants was to fill as many seats as possible with students and to obtain Federal Pell grants and other student loan sources in order to earn profits for

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 8**

Defendants. Defendants engaged in a blatant attempt to defraud the federal government and submit false claims through the means described in the following paragraphs.

40. Relators have direct and independent knowledge of the allegations contained herein and are therefore considered "original sources" as so required under the Federal False Claims Act 31 U.S.C. § 3729, *et seq.* All Relators are former or current admissions representatives or financial aid representatives of Alta Colleges, Inc. Relators have direct and personal knowledge of the fraud committed against the United States of America.

41.     The admissions representatives were trained and instructed to prospect for students, interview students, recruit students, take enrollments, oversee testing, oversee the financial aid process, review test results to determine whether students passed admissions testing, and monitor their attendance during the first ten (10) days of each semester. In this capacity, they were trained by their supervisors and other employees of Defendants regarding the tactics and techniques which were to be utilized to recruit students to Defendants' campuses and the process of qualifying students to receive financial aid.

42.     The financial aid representatives were responsible for ensuring that students qualified for and obtained federal funding for their schooling. The Relators had direct contact with students which included preparing financial applications.

43.     The Relators were instructed to enroll, and did in fact enroll students in programs they knew required state licensure/certification to obtain gainful employment. These activities were conducted while knowing that students could not obtain that state licensure by completing Defendants' programs. The Relators also misrepresented job placement statistics and falsified student loan documents.

## C. ILLEGAL RECRUITMENT - BONUS SYSTEM

44.     As noted above (Para. IV.A.25), HEA, Title IV, prohibits colleges and universities from providing "any commission, bonus or other incentive payment . . ." to recruiters based on recruiting activities. HEA, §§ 487(a) and 487(a)(20).

45.     Admissions representatives were given monthly and weekly goals for admissions. Relators were given minimum goals to achieve in order to keep their jobs or avoid other "corrective actions." Relator Brazell was informed by Admissions Director (Ft. Worth Campus) Lisa Hecht to make sure J.S. passed his Accuplacer exam because they needed to make budget.

46.     During late December of 2003, Relator Brazell was approached by Regional Director David Phillips who informed Relator Brazell his numbers were not high enough to deserve a lunch. He, Phillips, then proceeded to eat Relator's lunch.

47.     At the Ft. Worth campus, recruiters' statistics were tallied on a dry-erase board. From time to time, Phillips would come by and erase the name of low-performing recruiters to signify that their continued low numbers would cause their positions to be 'erased.' Phillips was also witnessed by Relator Brazell berating another representative Grant Godfrey, because of low student enrollment.

48.     Relator Granger was threatened with termination by Phillips, who informed the Relator that he could get a monkey to convert potential students into an enrollment rate of 4%.

49.     Relator Granger was told by Phillips to convince potential students to enter low-enrollment programs; even if that was not their interest of study. The recruiters were told by Phillips to tell the prospective students that, based on the information filled out in the Student Question are Evaluation, the program they were interested in would not be as good a fit as the under-enrolled program.

50.     Admissions representatives, including Relators, were reviewed on a monthly basis. Their performance was graded (including "frown" faces)' based on recruiting goals (see attached Exhibit "C").

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 10**

51.     Defendants set specific performance standards tied directly to the number of students recruited, with corresponding raises/decreases in compensation (see attached Exhibit "D"). Relators Brazell and Burrell were given Monopoly Money (see attached Exhibit "E-F") as prizes in recruiting contests. This play money could be turned in, together with real expense bills to pay for personal bills.

52.     Lavish parties were given for meeting `super budgets' for enrollment. Relator Granger was given such a party, a $1,000 fete, as well as lottery tickets.

53.     Relator Moers received $250.00 bonuses per term if all "new starts" were processed and certified within a given time frame and all admissions representatives met their goals.

### D. <u>ACADEMIC QUALIFICATIONS AND REQUIREMENTS</u>

54.     In order to be eligible for Federal Financial Aid, a student must have a high school diploma or equivalent or pass an approved "ability to benefit" examination. Relators were instructed by Defendants to certify on Federal Student Loan Applications that students had either graduated high school or completed a GED course making them eligible for receipt of federal student loan funds; knowing that at the time of the application such representations were false. In March of 2004, student J. L., with the assistance of Sara Jamaica Moers and the direction of her supervisors, verified that she had received her GED when in fact she had not. Relator Burell allowed students C.O. and R.J. to falsify Federal Student Loan Applications by stating that they had high school diplomas when in fact, they did not. Defendants instructed, encouraged, and authorized the Relators to encourage students to misrepresent vital information as to student aid eligibility.

56.     For students seeking admission who do not have a high school diploma or its recognized equivalent, Defendants must ensure that the applicant meets the government's "ability-to-

benefit" criteria. Federal regulations specify the testing procedures proprietary schools must follow. Test administrators must be certified by the test publisher. Certified test administrators may include high school guidance counselors, test and measurement experts, human resource development professionals, qualified professional educators, or regional Armed Forces Command staff who are experts in education, training, and human resource development.

57.    Additionally, the test must be "independently administered". To be "independently administered," a test must be given by an individual or by an organization with no current or prior financial or ownership interest in the school, its affiliates, or its parent corporation other than the interest generated through its agreement to administer the approved test. The test cannot be given by a current or former employee, consultant, or student of the school. An "independently administered" test must also be given at an assessment center. The assessment center must be staffed by professionally trained personnel and be independent of the admissions and financial aid processes.

58.    Defendants admitted students who did not meet the "ability-to-benefit" criteria for the education or training provided by the institution. The tests were not independently administered because the admissions office at Defendants' campuses administered the tests. Student services also administered tests and also tutored students on how to take the test. The tests were administered by untrained students who were encouraged by admissions officials to assist the students to ensure that they passed the tests. Students, including D.S., G.T., B.S., and P.H., were witnessed to be administering the tests to other students by Relators Jeff Granger, Amy Simon, Sara Jamaica Moers and Marguerite Burell. Students were also allowed to take the entrance exams in admission representative's offices while the admission's representative was present "coaching" the student in order to pass the ability-to-benefit exam. The admissions director, Eric Southwell, was witnessed

by Shannon Kowacich administering an ability-to-benefit test to a student in his office and coaching the student to ensure that the student passed the exam. Relators Amy Simon, Grant Godfrey, Jeffrey Granger and Gerald Brazell coached and tutored students and provided students with the answers to the Accuplacer test (an accepted ability-to-benefit test). Additionally, Gerald Brazell and Relator Granger took portions of the Accuplacer test on behalf of students so that they could pass and be admitted to Defendants' institution.

59.    Relators also encouraged students to use cell phones to call for answers. Relator Burell witnessed student J.Z. take her cell phone into an entrance exam and call S.F. for the answers. In addition, applicants were encouraged to use cell phone calculators to assist them with the math portion of the exam. In some instances, admission representatives took a portion of the exam on behalf of the student. Relator Burell coached several students on how to pass the entrance exam and gave them a "study guide" with the answers to questions which were very similar to those on the entrance exam. Relator Burell and other admission representatives were given this "study guide" by the "master rep," Phyllis Stevens, who is currently employed by Defendants at the Dallas Campus.

60.    Each of these activities were designed and carried out in order to circumvent the "ability-to-benefit" test requirements thereby allowing students who would not otherwise be eligible for Federal Financial Aid to obtain funding.

61. In order to be eligible to receive federal funding, students must be a U.S. Citizen or national or a U.S. permanent resident. In circumstances however, where the student did not meet the citizenship requirement but their spouse did meet the citizenship requirements, Relators were instructed to apply for Federal Funding in the spouse's name rather than the student's name in order that Defendants could defraud the United States out of federal funding for the student loan program.

62.    Defendants encouraged students to misrepresent their marital status in order to obtain the maximum amount of funds available. For example, student L.B. was unmarried, however, represented she was married in order to receive additional funding. J.K. was a student who was

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                      **PAGE 13**

represented she was married in order to receive additional funding. J.K. was a student who was single, yet the Defendants submitted his financial aid application as married in order to secure additional federal funds.

63.    Relator Burell allowed R.R. to use her maiden name and mother's address so she could qualify for PELL Grants. In addition, Applicant N. A. claimed to be married when in fact, she was not. Relator Burell and Defendants knew of the falsity, but assisted applicant with the application for PELL Grants pursuant to Defendants' instructions.

64.    In marketing and advertising its programs, Defendants must accurately report completion or graduation rates, transfer-out rates for a specific part of the general student body, and job placement rates. Title 20 U. S .C. Chapter 28 § 1094(8) requires an institution participating in the federal funding programs make available to prospective students the most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements and relevant state licensing requirements of the state in which such institution is located for any job for which the course of instruction is designed to prepare such prospective students.

65.    The Integrated Postsecondary Education Data System ("IPEDS") is conducted by the National Center for Educational Statistics ("NCES") as part of the Centers Congressional mandate under the National Education Statistics Act of 1994. The completion of all IPEDS surveys, in a timely and accurate manner, is mandatory for all institutions that participate in any Federal financial assistance program authorized by the federal government. Defendants willfully and intentionally falsified information required by the NCES in its IPEDS reporting.

66.    Defendants advertised job placement rates as a means of attracting students which were false and fraudulent and which were made in violation of the above referenced statute. Statistics were not published based on the most recent available data but dates from previous years would be substituted in lieu of declining job placements rates. Job rates were published from the Denver North

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 14**

campus to students from the Ft. Worth, Dallas and Houston campuses. Relators were required by Defendants to lie and misrepresent job rates to induce students to attend the campus. Graduate Career Service Advisor, Nichol Watts at the Fort Worth campus was asked to prepare reports when she completely lacked the underlying supporting data, thereby submitting false and fictitious reports to the Texas Workforce Commission. Defendants advertised a 97% job placement rate, when in fact the job placement rate was substantially lower.

67.    Pursuant to 31 U.S.C. §3731(b)(1)(2), said False Claims Complaint is hereby initiated within the applicable statute of limitations.

## V. **FIRST CLAIM FOR RELIEF**

## **FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1) - FALSE CLAIMS**

68.    Plaintiff re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

69.    Through the acts described above, Defendants and their agents and employees knowingly presented and caused to be presented to the United States Government false and fraudulent claims, records, and statements in order to obtain federal student loan funding for students enrolled at their campuses.

70.    Through the acts described above, and otherwise, Defendants and their agents, knowingly made, used, and/or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the United States government.

71.    Through the acts described above and otherwise, Defendants, their agents and employees knowingly made, used and caused to be made or used false records and statements to conceal, and increase Defendants' entitlement to receive federal funding. Defendants also failed to disclose to the government material facts that would have resulted in Defendants' ineligibility to receive federal funding.

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 15**

74.     Plaintiff United States has sustained damages as a result of Defendants' false or fraudulent claims in an amount to be determined at trial.

75, The United States and its fiscal intermediaries, unaware of the falsity of the records, statements, and claims made or submitted by Defendants, their agents and their employees paid and continue to pay Defendants for claims that would not have been paid had Defendants not submitted false claims for payment.

## VI. SECOND CLAIM FOR RELIEF

### FALSE CLAIMS ACT, 31 U.S.0 § 3729(a)(2) - FALSE STATEMENTS

76.     Plaintiff re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

77.     Through the acts described above, Defendants, their agents and their employees knowingly presented and caused to be presented to the United States Government false and fraudulent claims, records, statements in order to obtain federal student loan funding for students enrolled at their campuses.

78.     Through the acts described above, and otherwise, Defendants, their agents and their employees knowingly made, used, and/or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the United States government.

79.     Through the acts described above and otherwise, Defendants, their agents and their employees knowingly made, used and caused to be made or used false records and statements to conceal, and increase Defendants entitlement to receive federal funding. Defendants also failed to disclose to the federal government material facts that would have resulted in Defendants' ineligibility to receive federal funding.

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                          **PAGE 16**

80.    The United States and its fiscal intermediaries, unaware of the falsity of the records, statements, and claims made or submitted by Defendants, their agents and their employees paid and continue to pay Defendants for claims that would not have been paid if Defendants had not submitted false claims for payment.

81.    By reason of Defendants' false records, statements, claims and omissions and the acts taken in furtherance thereof, the United States have been damaged in the amount of many millions of dollars in Federal Student Aid funding.

## VII. THIRD CLAIM FOR RELIEF

## FRAUD and FRAUD IN THE INDUCEMENT - AGAINST THE UNITED STATES

82.    Plaintiffs re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

83.    The Defendants' misrepresentations and omissions to Plaintiff were made intentionally, or made recklessly without any knowledge of their truth. Defendants made the above misrepresentations and omissions with the intent that the Plaintiff rely on them. Defendants knew that the misrepresentations or omissions were material to Plaintiff's decisions to enter into contracts with Defendant.

84.    Plaintiff relied on the material misrepresentations or omissions and has sustained damages in an amount to be determined at trial.

85.    The United States and its fiscal intermediaries, unaware of the falsity of the records, statements, and claims made or submitted by Defendants, their agents and their employees paid and continue to pay Defendants for claims that would not have been paid had Defendants not submitted false claims for payment.

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                          **PAGE 17**

## VIII. FOURTH CLAIM FOR RELIEF

### FALSE CLAIMS ACT CONSPIRACY

86.     Plaintiff re-alleges and incorporates the all of the allegations contained in the preceding paragraphs.

87.     Defendants are liable under 31 U.S.C. § 3729(a)(3).

88.     This is a claim for treble damages and forfeitures under the False Claims Act 31 U.S.C. §§ 3729, *et seq.*

89.     Through the acts described above and otherwise, Defendants entered into a conspiracy or conspiracies among themselves and with others to defraud the United States by getting false and fraudulent claims allowed or paid. Defendants have also conspired to omit disclosing or to actively conceal facts, which if known, would have reduced or eliminated government obligations and benefits to them. Defendants have taken substantial steps in furtherance of those conspiracies by falsifying IPEDS reports and other records, by submitting such records to the federal government for payment or approval and by directing their agents, consultants and personnel to not disclose and/or to conceal Defendants' fraudulent practices.

90.     The United States and its fiscal intermediaries were unaware of Defendants' conspiracies or the falsity of the records, statements and claims made by Defendants and their agents, their employees and their co-conspirators. As a result, Plaintiff has paid and continues to pay millions of dollars in Federal Student Aid that it would not otherwise have paid.

91.     By reason of Defendants' conspiracies and the acts taken in furtherance thereof, the United States has been damaged in the amount of many millions of dollars in Federal Student Aid funding.

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 18**

## IX. FIFTH CLAIM FOR RELIEF

## <u>FALSE CLAIMS ACT, 31 U.S.C. 3729(a)(7) – FALSE CLAIMS</u>

92.    Plaintiffs re-allege and incorporate the all of the allegations contained in the preceding paragraphs.

93.    Through the acts described above, Defendants, their agents and their employees knowingly made, used, or caused to be used, a false record or statement to conceal, avoid, or decrease and obligation to pay or transmit money or property to the government.

94.    By reason of Defendants' false records, statement, claims and omissions and the acts taken in furtherance thereof, the United States have been damaged in the amount of many millions of dollars in Federal Student Aid funding.

## X. NOTICE TO THE UNITED STATES

95.    (a) As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), Relators, simultaneously with the filing of this Complaint, provided to the United States Attorney for the Eastern District of California a statement of all material evidence and information related to Relator'S Original Complaint. (b) This disclosure statement supports the existence of "submission of a knowingly false or fraudulent claim for payment or approval," under the False Claims Act (31 U.S.C. § 3729(a)(1)).

## XI. JURY DEMAND

96.    Plaintiff and Relators request a jury trial.

## XII. PRAYER

WHEREFORE, Plaintiff and Relators pray that this Honorable Court enter judgment against Defendants as follows:

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                                    **PAGE 19**

A.    That Defendants cease and desist from violating 31 U.S.C. § 3729, *et seq*.

B.    That Defendants are liable to Plaintiff in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of 10,000-50,000 for each violation of 31 U.S.C. § 3729;

C.    That the Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

D.    That the Relators be awarded all costs and expenses of this action including attorney's fees; and

E.    That the United States and Relators receive all such other relief as the Court deems just and proper.

Respectfully submitted,

**VAN WEY & JOHNSON, L.L.P.**

By:_____
Julie E. Johnson
State Bar No. 10758900
Kay L. Van Wey
State Bar No. 20461960

3100 Monticello Ave., Suite 500
Dallas, Texas 75205
Phone: 214-265-7600
Facsimile: 214-265-7626

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing complaint was served by United States mail on the 20 day of December, 2007, to each of the following:

Janie L. Frank
US Department of Justice
United States Attorney's Office
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, TX   76102

Julie E. Johnson

**THIRD AMENDED FALSE CLAIMS COMPLAINT**                    **PAGE 21**

Exhibit "A"

## Application for a New Workforce Education Program
## STATEMENT OF ASSURANCES
(Proprietary Institutions)

Institution: <u>Westwood College of Technology-Ft.Worth</u>          FICE Code: _____

Program Name: <u>Associate of Applied Science in Interior Design</u>    Proposed CIP Code: <u>50.0408</u>

     In submitting this application for a new applied associate degree program, I certify that all of the following criteria have been met AND that the proposed program satisfies all applicable requirements contained in the *Guidelines for Instructional Programs in Workforce Education* and Chapter 12, Coordination Board Rules.

➡ The institution has documented need for the proposed program based on national, regional and/or local economic forecasts applicable to its target market area.

➡ The institution has also identified sufficient employment opportunities within its target market area for the projected number of graduates, taking into consideration to the numbers of graduates of similar programs (if any) within its target market area.

➡ Instruction in basic workforce skills has been integrated into the curriculum for the proposed program.

➡ Each program award offers at least one of the following: a capstone, an external learning experience, or eligibility to sit for a certification or licensure examination.

➡ All course and program prerequisites are identified on the proposed curriculum outline and included in the credit/contact hour totals for the program.

➡ An enrollment management plan for the program is in place.

    *(Check only if applicable)* The program satisfies all requirements of relevant licensing authorities

      Name of authority   <u>N/A</u>
                  (e.g. FAA; FCC; Board of Nurse Examiners; Court Reporter Certification Board)

➡ An advisory committee composed of representatives from business and industry, in accordance with Coordinating Board Rules, has been directly involved in the creation of this program.

➡ Adequate funding is available to cover all program costs for the first 3 years.

➡ The institution is in good standing with its accreditor and the Texas Workforce Commission.

➡ The institution is not currently a defendant in a legal proceeding or has notified the Board according to the provisions of Coordinating Board Rules, Chapter 12.

➡ Written notice of this application has been sent to the appropriate Higher Education Regional Council(s).

<u>                                                          </u>    <u>1/10/03</u>
Signature of Institution CEO or CEO's Designee         Date

    Governing Board Approval Required   ___ Yes*   <u>X</u> No

    *(if checked)*    Governing Board Approval Date   _____

**Application for a New Workforce Education Program**
**STATEMENT OF ASSURANCES**
(Proprietary Institutions)

Institution:  Westwood Institute of Technology – Houston South    FICE Code: _____

Program Name:  Interior Design _____    Proposed CIP Code: _____

       In submitting this application for a new applied associate degree program, I certify that all of the following criteria have been met AND that the proposed program satisfies all applicable requirements contained in the *Guidelines for Instructional Programs in Workforce Education* and Chapter 12, Coordination Board Rules.

—   The institution has documented need for the proposed program based on national, regional and/or local economic forecasts applicable to its target market area.

—   The institution has also identified sufficient employment opportunities within its target market area for the projected number of graduates, taking into consideration to the numbers of graduates of similar programs (if any) within its target market area.

—   Instruction in basic workforce skills has been integrated into the curriculum for the proposed program.

—   Each program award offers at least on of the following:  a capstone, an external learning experience, or eligibility to sit for a certification or licensure examination.

—   All course and program prerequisites are identified on the proposed curriculum outline and included in the credit/contact hour totals for the program.

—   An enrollment management plan for the program is in place.

—   *(Check only if applicable)* The program satisfies all requirements of relevant licensing authorities

    Name of authority_____
                 (e.g. FAA; FCC; Board of Nurse Examiners; Court Reporter Certification Board)

—   An advisory committee composed of representatives from business and industry, in accordance with Coordinating Board Rules, has been directly involved in the creation of this program.

—   Adequate funding is available to cover all program costs for the first 3 years.

—   The institution is in good standing with its accreditor and the Texas Workforce Commission.

—   The institution is not currently a defendant in a legal proceeding or has notified the Board according to the provisions of Coordinating Board Rules, Chapter 12.

—   Written notice of this application has been sent to the appropriate Higher Education Regional Council(s).

_____    4/30/03
Signature of Institution CEO or CEO's Designee        Date

Governing Board Approval Required    __ Yes*   ✓ No

   *(if checked)*     Governing Board Approval Date  _____

## Application for a New Workforce Education Program
## STATEMENT OF ASSURANCES
(Proprietary Institutions)

Institution: Westwood College of Technology-Dallas _____    FICE Code: _____

Program Name: Associate of Applied Science in Interior Design    Proposed CIP Code: 50.0408

     In submitting this application for a new applied associate degree program, I certify that all of the following criteria have been met AND that the proposed program satisfies all applicable requirements contained in the *Guidelines for Instructional Programs in Workforce Education* and Chapter 12, Coordination Board Rules.

➨ The institution has documented need for the proposed program based on national, regional and/or local economic forecasts applicable to its target market area.

➨ The institution has also identified sufficient employment opportunities within its target market area for the projected number of graduates, taking into consideration to the numbers of graduates of similar programs (if any) within its target market area.

➨ Instruction in basic workforce skills has been integrated into the curriculum for the proposed program.

➨ Each program award offers at least on of the following: a capstone, an external learning experience, or eligibility to sit for a certification or licensure examination.

➨ All course and program prerequisites are identified on the proposed curriculum outline and included in the credit/contact hour totals for the program.

➨ An enrollment management plan for the program is in place.

    *(Check only if applicable)* The program satisfies all requirements of relevant licensing authorities

    Name of authority  N/A  _____
        (e.g. FAA; FCC; Board of Nurse Examiners; Court Reporter Certification Board)

➨ An advisory committee composed of representatives from business and industry, in accordance with Coordinating Board Rules, has been directly involved in the creation of this program.

➨ Adequate funding is available to cover all program costs for the first 3 years.

➨ The institution is in good standing with its accreditor and the Texas Workforce Commission.

➨ The institution is not currently a defendant in a legal proceeding or has notified the Board according to the provisions of Coordinating Board Rules, Chapter 12.

➨ Written notice of this application has been sent to the appropriate Higher Education Regional Council(s).

_____    1/10/03
Signature of Institution CEO or CEO's Designee            Date

Governing Board Approval Required  ___ Yes*  _X_ No

    *(if checked)*    Governing Board Approval Date  _____

# Exhibit "B"

333 Guadalupe, Suite 2-350
Austin, TX 78701-3942
512•305•9000



P.O. Box 12337
Austin, TX 78711-2337
512•305•8900 Fax)
www.tbae.state.tx.us (Web)

## Texas Board of Architectural Examiners
Architecture / Interior Design / Landscape Architecture

May 3, 2004

Kelly Coates
President, Westwood College
1331 Airport Freeway, Suite 402
Euless, TX 76040

Dear President Coates:

One of your former students, Jennifer Mills, called me recently to discuss the qualifications for registration as an interior designer in Texas. After speaking with her, I am concerned that some of the students in your interior design program do not understand that a degree from your school will not fulfill the educational requirement for interior designer registration in Texas.

Enclosed is a copy of Subchapter B, Rule 5.31, and Subchapter J of the Rules and Regulations of the Board. Several options for meeting the educational requirements are included in the rule, with graduation from a FIDER accredited program plus two years' approved experience as the fastest track to qualifying for registration. Although some Associate's Degree programs can be used to fulfill the educational requirement, this is not true for technical schools such as Westwood College because it is not accredited. Please refer to Rule 5.31(a)(3)(B) and 5.31(a)(5)(A).

Please pass this information along to all your interior design students to prevent disappointment for them in the future, and let them know that they can call our Director of Registration, Mary Helmcamp, at 512/305-8539 for more information.

Sincerely,

Cathy Hendricks, ASID/IIDA
Executive Director

Enclosures
cc:    Alan Lauck, TBAE Board Member
       Jennifer Mills
       Doug Bjerkaas, Director of Education
       Jan Parker, Art Institute of Dallas
       Marian Millican, University of Texas at Arlington
       Donna Vining, FASID, Texas Association of Interior Designers
       J.D. Carter, President, Texas Chapter, American Society of Interior Designers
       Kayem Dunn, Foundation for Interior Design Education Research

Exhibit "C"



| Rep | WEEK | MONTH | MONTH BUDGET | T | |
|-----|------|-------|--------------|---|---|
| RS | 0 | 0 | 12 | | |
| AS | NA | 0 | NA | — | |
| GB | 0 | 0 | 11 | | |
| MM | 1 | 1 | 10 | | |
| MB | 9 | 0 | 11 | 1 | |
| AA | 9 | 7 | 12 | | |
| LW | 0 | 0 | 9 | | |

# Exhibit "D"

## CAMPUS ADMISSIONS
### Minimum Acceptable Performance Objectives

<u>Philosophy of Minimum Acceptable Performance Objectives</u>
Representatives will be have two sets of goals each month and each class: A target goal that will be agreed upon with the manager and a minimum acceptable performance objective that will be assigned by the manager. Representatives and Managers must focus on a strategy to attain the target goal and should never focus on the assigned minimum expectation as the objective. Representatives should set **specific, challenging, and achievable** target goals that become the focus of their work. Meeting minimum objectives does not mean that the job is well done. It is simply a means of avoiding corrective action.

## MONTHLY PERFORMANCE

| Month | Standard | Non-Standard | | | |
|---|---|---|---|---|---|
| | | DNX | HNX | National | Agency |
| October | 11-16 | 11-17 | 17-22 | 7-12 | 9-14 |
| November | 7-12 | 8-14 | 12-17 | 5-10 | 6-11 |
| December | 7-12 | 8-14 | 11-16 | 5-10 | 6-11 |
| January | 10-15 | 10-16 | 16-21 | 7-12 | 9-14 |
| February | 8-13 | 10-16 | 14-19 | 6-11 | 7-12 |
| March | 8-13 | 9-15 | 12-17 | 5-10 | 6-11 |
| April | 10-15 | 10-16 | 15-20 | 6-11 | 8-13 |
| May | 8-13 | 8-14 | 12-17 | 5-10 | 6-11 |
| June | 8-13 | 8-14 | 12-17 | 5-10 | 6-11 |
| July | 11-16 | 11-17 | 17-22 | 7-12 | 9-14 |
| August | 10-15 | 10-16 | 14-19 | 6-11 | 8-13 |
| September | 9-14 | 10-16 | 14-19 | 6-11 | 8-13 |

❖ First partial month and first full month will be set at the discretion of the Director of Admissions, based on circumstances, but not higher than chart.
❖ Second full month will be set as follows:

| Standard | 2.25 apps per week |
|---|---|
| DNX | 1.75 apps per week |
| HNX | 3.00 apps per week |
| Agency | 1.75 apps per week |
| National | 1.25 apps per week |

The total monthly minimum acceptable should not be higher than chart in the second full month.
❖ Third full month will be in accordance with the standard chart.
❖ Monthly minimums will be adjusted for PRE-APPROVED vacation time. They will not be adjusted for sick time or any other reason.

### Start-Up Schools
Monthly minimum acceptable objectives will be adjusted according to the chart below for start-up operations. Target goals must still remain in line with expectations at each particular campus.

| Months 1-3 | 85% of standard |
|---|---|
| Months 4-6 | 90% of standard |
| Month 7+ | Standard |

Revised date
10/23/00

# ALTA COLLEGES, INC.
## WESTWOOD COLLEGE OF TECHNOLOGY
## WESTWOOD COLLEGE OF AVIATION TECHNOLOGY
### *Admissions Representative Compensation Plan*
### *Campus, WOL, National Correspondence, and International Admissions*
#### Effective 01/01/2004

The objective of the Admissions Representative Compensation Plan is to fairly compensate Admissions Representatives based on total quality performance, level of responsibility, and tenure. The plan provides a focus on the recruitment of quality students who possess the skills and ability to graduate from Westwood College.

All Admissions Representatives are compensated in accordance with the following plan. There are two components to the plan:
   1) Annualized Base Salary
   2) Retention and Completion Bonus

## 1) ANNUALIZED BASE SALARY

Annualized base salary will be one of the following levels:

| Representative Position | Annual Salary |
|---|---|
| Admissions Representative-Level One | $28,000-$40,000 |
| Admissions Representative-Level Two | $40,500 to $43,000 |
| Admissions Representative-Level Three | $43,500 to $46,500 |
| Senior Admissions Representative-Level One | $47,000 to $50,000 |
| Senior Admissions Representative-Level Two | $50,500 to $53,500 |
| Senior Admissions Representative-Level Three | $54,000 to $56,500 |
| Master Admissions Representative-Level One | $57,000 to $61,000 |
| Master Admissions Representative-Level Two | $61,500 to $65,000 |
| Master Admissions Representative-Level Three | $65,500 to $70,000 |

**Market Differential**
A base salary differential will be added for representatives in campuses and territories throughout the system where salary differences based on market demand are necessary. This is detailed in the **Market Differential Addendum** to the Compensation Plan.

**Tenure Salary**
To reward representatives for tenure with the company, a tenure salary will be added to the base salary effective at the review following the anniversary date:

| | |
|---|---|
| 1 year anniversary | $500 over Representative Salary Level |
| 2 year anniversary | $1,500 over Representative Salary Level |
| 3 year anniversary | $2,000 over Representative Salary Level |
| 4 year anniversary | $2,500 over Representative Salary Level |
| 5 year anniversary | $3,000 over Representative Salary Level |
| 6 year anniversary | $3,500 over Representative Salary Level |
| 7 year anniversary | $4,000 over Representative Salary Level |

| | |
|---|---|
| 8 year anniversary | $4,500 over Representative Salary Level |
| 9 year anniversary | $5,000 over Representative Salary Level |
| 10 year anniversary | $6,000 over Representative Salary Level |

In order to qualify for the tenure salary, representatives must be in good standing without corrective action. The Director of Admissions will need to prepare a written recommendation for the additional salary and receive proper approvals from the Regional Director of Admissions and Vice President of Campus Admissions.

**New Representatives**

New representatives will begin as an Admissions Representative Level 1 and will be reviewed as detailed below. Exceptions to this must be approved by the Vice President of Campus Admissions.

**90-Day Initiation Period**

New Representatives will be evaluated throughout the initial training period. If performance levels and training requirements are not met during this period, the initiation period could be extended for a designated period of time to give the representative an opportunity to show improvement or employment could be terminated. The 90-day review is only to determine the progress of the representative. There is no monetary review at this time.

**Merit Review and Quality Review Cycles**

After the initial 90-day review, Representatives will be evaluated in accordance with the merit review and quality review cycles. If performance warrants, a representative could be promoted to a higher level. **Addendum A, the Merit and Quality Review Schedule,** details when representatives receive merit/quality reviews. There are two rules to determine when Merit/Quality Reviews can occur. They are:

- The first Merit/Quality Review will occur at the end of the month when the representative has been employed for six full months.
- The next review will occur in line with the review cycle. There must be four full months between the first and second review. All future reviews will be conducted in line with the review cycle.

**Representative Levels**

There are three position levels to which Admissions Representatives can aspire: Admissions Representative, Senior Admissions Representative, and Master Admissions Representative. Each of these classifications has three salary range levels within them. Each level has varied job responsibilities and performance expectations.

All representatives will be assessed for performance two times per year in accordance with the Merit Review and Quality Review Cycle.

The purpose of the Merit Review and Quality Review Cycle is to ensure that the representative is making sufficient progress throughout the year. An assessment

Revised 01/30/04 8:27 AM
Admission Representative Compensation Plan
_____Representative Initials

indicating unacceptable performance for the level involved will result in a specific plan to correct the problems. Continued unacceptable performance could result in corrective action, including termination of employment.

Representative Levels will be reviewed at the time of the Merit/Quality reviews. Levels can be raised, lowered, or remain the same at the time of the reviews. Each of the levels has specific performance expectations and varied responsibilities. **Addendum B** to the compensation plan details the minimum expectations and responsibilities for each level. In addition to meeting the minimum requirements for a given level, the representative must be evaluated as having the necessary skills for that level. One of the performance expectations that is used in determining representative levels is the Prospective Graduate Equivalent level for the representative. **Addendum C** to the compensation plan details the weights and definition of the prospective graduate equivalent.

## 2) RETENTION AND COMPLETION BONUS

A retention and completion bonus will be paid to the representative five times per year in February, April, June, September, and November. Each retention and completion bonus will include all qualified payments over the past period. A representative can receive up to two payments for each student as they progress through their academic programs.

Qualified payments are earned as follows:

| Bachelor Degree Granting School | |
|---|---|
| Payment One | Student Completes One Academic Year (three terms) with a minimum of 36 credit hours completed at Westwood College. Student must enter the next term for the representative to qualify for payment. |
| Payment Two | Student completes Three Academic Years (nine terms) with a minimum of 108 credit hours completed at Westwood College. |

| Non-Bachelor Degree Granting School | |
|---|---|
| Payment One | Student Completes One Academic Year (three terms/six blocks) with a minimum of 36 credit hours completed at Westwood College. Student must enter the next term/block for the representative to qualify for payment. |
| Payment Two | Student graduates from the Associate's degree or A&P program. Diploma programs in the technology schools do not qualify for the second payment. |

**Addendum D** to the compensation plan will outline the dollar amount of each retention and completion bonus, based on program, etc.

If a representative is not employed or has moved into a position outside of the Admissions organization at the time the payout, payments will not be earned or received. Directors of Admissions and other sales management employees who have been

3

promoted or transferred from the ranks of Representative or Assistant Director of Admissions will not be eligible for retention and completion bonuses, as they will be placed on a different compensation plan. Representatives who leave the organization and are re-hired will not be eligible for payment on graduates enrolled prior to the time of re-hire.

**Re-Starts**

If a student drops out of school, the student will be pursued as a "re-enter" or "re-start" in accordance with company policies and procedures. If the student returns to school as a **re-enter** (returned to school within six months), the original representative will be eligible for the retention and completion bonus. If the student returns to school as a **re-start** (last date of attendance was greater than six months from the new start date), the student must be re-enrolled by an admissions representative. The most recent representative will be eligible for the retention and completion bonus. HOWEVER, if either of the two payments were awarded to the original representative, that payment will not be awarded to the new representative. In any event, a re-start must complete one academic year with at least 36 credit hours AFTER their return for any payment to qualify or be earned.

**Upgrades (applicable only in bachelor's degree granting schools)**

If a representative enrolls a student in a non-bachelor's degree program and the student is upgraded to a bachelor's degree at a later date (after beginning classes), the representative will be eligible only for the first payment after one academic year. The representative will not be eligible for the second payment as the student enters the ninth term unless the student was originally enrolled for the bachelor's program.

If a student graduates with an Associate degree and returns one year after the last date of attendance, the student is no longer considered an upgrade and must be enrolled by an Admissions representative. In this case, the representative would be eligible for the first payment after one academic year.

If a graduate of a diploma or Associate program returns to school in a different program to obtain a second degree, this is considered a new enrollment. Payments will qualify in line with the plan.

If a student is originally enrolled in a bachelor's program and then downgrades to an associate program, the second payment will not be paid to the original representative if the student returns to the bachelor's degree program at a later date.

**Non-matriculating students**

Students enrolled as non-matriculating (not seeking a degree) do not qualify for the graduation bonus unless the status is changed to matriculating and they graduate.

**Employee or employee dependent students**

There will be no retention and completion bonus paid on these students.

4

**Minimum Acceptable Performance Expectations**

Representatives are expected to perform at optimum levels in all areas, including conversion rates, activity levels, start-rates, and overall monthly and class performances. For each month and each class, minimum acceptable performance expectations will be set for representatives. Failure to attain these levels of performance will result in corrective action including probation and/or termination of employment.

5

**Administration of the Plan**

Alta's Vice Presidents of Admissions and Alta's Chief Financial Officer will oversee administration of this compensation plan. These individuals will review any decision regarding the interpretation or administration of this plan and their decision will be final. The Administration reserves the right to make changes to this plan at any time. Should a new compensation plan be implemented, any payments not currently due and payable under this plan will no longer be payable or due in the future, and all aspects of this plan will be superseded by the new plan.

---

I have received a copy of the Admissions Representative Compensation Plan.


_____        _____
(Representative Signature)                        Date


_____        _____
(Manager Signature)                                 Date

6

# Exhibit "E"







Exhibit "F"

# ALTA COLLEGES EXPENSE REPORT

**Employee Name** Margarite Burell
**Campus Address** 1331 airport Freeway St 402
**City, State, Zip** Euless, Texas 76040

**Date:** Enter Date 11/17/04

**Campus / Department:** DLF

Send Check to: Campus

| Restaurant Name | With Whom | Business Purpose | QTY | Meal Type | Date | Amount | Campus | Account # |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | Meal Total | $ - | |

| Transportation Type | | Purpose | | Date | Amount | Campus | Account # |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Mileage reimbursed at $0.205 per mile | | | Transportation Total | $ - | | | |

| Hotel Name | Location/City | Purpose | Date | Amount | Campus | Account # |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Hotel Total | $ - |

| Award & Misc. Expense | Purpose | Date | Amount | Campus | Detail | Account # |
|---|---|---|---|---|---|---|
| Wal-Mart | Rep of the month | 11/16/2004 | $ 75.00 | DLF | Employee Award | 6226-00-6071 |
| Wal-Mart | contest | 11/16/2004 | $ 30.00 | dlf | Program/Contest | 6060-00-6071 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | Other Total | $ 105.00 | | | |

I Certify that the above expenses have been incurred by me on behalf of Alta Colleges/Westwood Colleges.

| | | |
|---|---|---|
| $ | - | Total Meals |
| $ | - | Total Transportation |
| $ | - | Total Hotels |
| $ | 105.00 | Total Awards & Misc. Expenses |
| $ | 105.00 | TOTAL AMOUNT DUE |

*Margarite Burell* 11/17/04
Employee Signature          Date

*Deff Hogg* 11/17/04
Approval Signature (DA/RD)          Date

*DaviD Hogg*
Print Name (DA/RDA)

Approval (VP)          Date

Pay Date: _____

Original receipts must be taped to a separate sheet of paper.
**Send to corporate finance directly for payment after DA and RDA sign.**

Corporate Use Only : _____ - _____

# WAL★MART ®

## ALWAYS LOW PRICES.



SUPERCENTER
WE SELL FOR LESS
MANAGER DAVID MCKENZIE
( 817 ) 571 - 7928
BEDFORD, TX

```
ST# 1176 OP# 00006105 TE# 31 TR# 07130
END TABLE      002097237644K    35.72 X
COFFEE TABLE   002097237645K    58.42 X
DADCARBSMART   001650051847      5.99 O
    WAS 7.33 YOU SAVED 1.34
SMOKE ALARM    002905412301      9.77 X
CHOCOLATE      004000002123 F    0.97 X
HRSHY KITKAT   003400008750 F    2.38 X
CERAMIC ANGE   070801682808      4.24 X
COKE           004900003268 F    0.96 X
BOXED CARDS    007316809407      4.88 X
SMOKE ALARM    002905400000      7.96 X
PHOTO FRAME    003855545608      2.00 X
PHOTO FRAME    003855545608      2.00 X
             SUBTOTAL          135.29
    TAX 1   8.250 %             10.67
                TOTAL          145.96
           DEBIT TEND          145.96
          CHANGE DUE             0.00
```

$105.00$

```
EFT DEBIT      PAY FROM PRIMARY
ACCOUNT :              0109
   145.96  TOTAL PURCHASE
REF # 432100780249
NETWORK ID. 0071 APPR CODE 708671
      11/16/04    15:23:16
```

# # ITEMS SOLD 12

TC# 9597 6587 9808 1620 3994 9



Christmas Shopping? Don't Forget
at Wal-Mart You Can Put It on Layaway
       11/16/04    15:23:17

# ALTA COLLEGES 1062

Expense/Mileage Voucher
Date: 5/24/2004, Page: 1 of 1

**Employee Name:** Margarite Burell
**Street Address:** 1331 Airport Fry st 402
**City, State, Zip:** Euless, Texas 76040

**Purpose:** Admissions
**Date:** 5/24/04
**Home Campus:** 3971

○ Mail expense check to home address    ⦿ Send expense check to home campus

| Meal Location | With Whom | Purpose | Date | Amount | | Account Code |
|---|---|---|---|---|---|---|
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| Meal Total (Carry down to expense totals) | | | | $ - | | |

| Transportation To/From | Type Mileage/Car/Shuttle | Purpose | Date | Amount | | Account # |
|---|---|---|---|---|---|---|
| | | | | | 1062 | 6296 - National |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| Transportation Total (Carry down to expense totals) | | | | $ - | | |

| Hotel Where | | Purpose | Date | Amount | | Account # |
|---|---|---|---|---|---|---|
| | | | | | 1062 | 6296 - National |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | $ - | | |

| Other Expenses | Title | Purpose | Date | Amount | | Account # |
|---|---|---|---|---|---|---|
| Lowes | | contest | 5/15/2004 | $ 108.00 | 1062 | 7199 - Misc |
| Target | | contest | 5/22/2004 | $ 92.00 | 1062 | 7199 - Misc |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| | | | | | 1062 | ▼ |
| Other Total (Carry down to expense totals) | | | | $ 200.00 | | |

I Certify that the above expenses
have been incurred by me on behalf
of Alta Colleges/Westwood Colleges

| | |
|---|---|
| Total Meals | $ - |
| Total Transportation | $ - |
| Total Hotels | $ - |
| Total Other | $ 200.00 |
| Advance Received | $ (0.00) |
| Balances Due - Company | $ 0.00 |
| Balances Due - Employee | $ 200.00 |

_____    _____
Employee Signature           Date

Airfare Amt. Billed to BTA $

_____    _____
Approval (DA/RDA)           Date

Coding:   1062        Pay Date: _____

_____    _____
Approval (VP)               Date

1062 Expense Report-bill to ALTA



**TARGET**
EXPECT MORE. PAY LESS.

05/22/2004    03:50 PM
RECEIPT EXPIRES ON 08/20/04

A receipt dated within 90 days is
required for ALL returns & exchanges.
Giving a gift? Include a gift receipt!

| | | | |
|---|---|---|---|
| 065100287 | ROSE FLORAL | T | 11.99 |
| 044080112 | MENS SOCKS | T | 6.49 |
| 094030219 | TGT LORATADN | N | 8.44 |
| 066000404 | DOORMAT | T | 7.99 |
| 203400548 | AQUAFINA | FN | 0.99 |
| 049080058 | SCOPE | T | 3.74 |
| 025043782 | PS BAG 10PK | T | 8.99 |
| 009060439 | GRILL BRUSH | T | 2.99 |
| 025042060 | CHER TROUSER | T | 4.99 |
| 077141155 | XHIL SANDAL | T | 8.99 |
| 049091189 | COLGATE TOTL | N | 2.79 |
| 065060375 | WATERGLOBE | T | 9.99 |
| 049060490 | MACH3 | T | 6.69 |
| 055090057 | ORBIT | FT | 0.89 |

SUBTOTAL    85.96
T = TX TAX  8.2500% on  73.74    6.08
TOTAL    92.04

CASH PAYMENT    100.00
CHANGE DUE    7.96

RECEIPT ID# 2-4143-1770-0097-4400-5
VCD#755284649    TM#****6809

Save ALL Receipts
Give Gift Receipts & Gift Cards
Ask about Receipt Lookup

**LOWE'S**

FORT WORTH, TX
(817) 738-2050
-SALE-
SALES #: S0525WB1 223840    05-15-04

| | | |
|---|---|---|
| 41175 10.5OZ LN-PROJECT | | 3.72 |
| 3 @ | 1.24 | |
| 29469 3/16" READY TO PA | | 52.47 |
| 3 @ | 17.49 | |
| 1540 ALABASTER/CRYSTAL | | 9.96 |
| 2 @ | 4.98 | |
| 1538 ALABAS/CRYSTAL WH | | 6.42 |
| 3 @ | 2.14 | |
| 768 CRYSTAL WHITE CAP | | 7.92 |
| 2 @ | 3.96 | |
| 96321 3/16" JUBILEE WHI | | 53.97 |
| 3 @ | 17.99 | |

SUBTOTAL:    134.46
TAX    30536 :    11.09
INVOICE 22848 TOTAL:    145.55

BALANCE DUE:    145.55

CHECK :    145.55

0525 TERMINAL: 22  05/15/04 11:15:03