SEALED

ORIGINAL    IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

R 7 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| PLAINTIFF, and *ex rel.* | § | |
| | § | |
| GERALD BRAZELL, et al., | § | |
| | § | |
| *QUI TAM* PLAINTIFFS, | § | |
| | § | |
| v. | § | NO.: 3:05-CV-0319-N |
| | § | |
| ALTA COLLEGES, INC., | § | |
| ELBERT, INC., d/b/a WESTWOOD | § | |
| COLLEGE-FORT WORTH, TRAV | § | FILED UNDER SEAL |
| CORPORATION d/b/a WESTWOOD | § | |
| COLLEGE DENVER NORTH and/or | § | |
| WESTWOOD COLLEGE HOUSTON | § | JURY REQUESTED |
| SOUTH, and EL NELL, INC., d/b/a | § | |
| WESTWOOD COLLEGE-DALLAS, | § | |
| | § | |
| DEFENDANTS. | § | |

## AMENDED COMPLAINT OF THE UNITED STATES OF AMERICA

Plaintiff United States of America (United States) on behalf of the United States

Department of Education, files its Amended Complaint, intervening on some but not all

of the causes of action brought by Relators, against Defendants Alta Colleges, Inc.,

Elbert, Inc., d/b/a Westwood College–Fort Worth, Trav Corporation d/b/a Westwood

College Denver North and/or Westwood College Houston South, and El Nell, Inc., d/b/a Westwood College–Dallas (hereinafter collectively referred to as "Alta Colleges"), and respectfully shows the Court the following:

I.

INTRODUCTION

1.     This is an action to recover damages, civil penalties, and costs on behalf of the United States, arising from false statements and claims knowingly presented to or caused to be presented to the United States and the Department of Education, by and through Alta Colleges, in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the common law. The false claims and statements at issue were knowingly presented and/or were made, or caused to be presented or made, by Alta Colleges in order to participate in the student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 *et seq.* ("Title IV, HEA programs"). These Title IV, HEA programs provide students with financial aid in the form of, among other things, Pell Grants and loans guaranteed by the federal government. Alta Colleges made a number of false statements in order to obtain eligibility to participate in these financial assistance programs.

2.     The False Claims Act (FCA) generally provides that any person, whether individual or entity, who knowingly causes false or fraudulent claims for payment to be presented to the government, or who makes or uses a false record or statement to obtain

payment from the government for a false or fraudulent claim, is liable for three times the amount of any damages sustained as a result; for civil penalties between $5,500 and $11,000 for each false or fraudulent claim presented; and for the costs associated with filing the FCA action. A person knows or acts "knowingly" with respect to information under the FCA if they: (a) have actual knowledge of the information; (b) act in deliberate ignorance of the truth or falsity of the information; or (c) act in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b).

3.    Pursuant to the FCA and common law theories of payment by mistake, fraud, and unjust enrichment, the United States seeks to recover damages and civil penalties arising from Alta College's knowingly false, misrepresented, and/or improper certifications of eligibility to the DOE for its Title IV, HEA program.  From 2002 to 2005, Alta Colleges knowingly submitted or caused to be submitted claims for payment to the DOE based upon these false certifications.

II.

PARTIES

4.    This is a *qui tam* action originally brought pursuant to the FCA by the various Relators on behalf of the United States. Plaintiff United States intervenes on some

but not all of the causes of action brought by Relators and brings this action on behalf of the Department of Education, the government department that administers the Title IV, HEA programs.

5.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Texas.

6.     The Defendant Alta Colleges, Inc., is a private, for-profit corporation, incorporated in Delaware, which wholly owns the other three Defendant corporations that operate three proprietary postsecondary schools in Texas. It may be served with process by serving its registered agent, Corporation Trust Center, at 1209 Orange Street, Wilmington, Delaware 19801.

7.     Elbert, Inc., d/b/a Westwood College–Fort Worth, is a Colorado corporation doing business in the Northern District of Texas. It is a wholly owned subsidiary of Defendant Alta Colleges, Inc. It may be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

8.     Defendant Trav Corporation d/b/a Westwood College Denver North and/or Westwood College Houston South is a Colorado corporation doing business in Texas. It is a wholly owned subsidiary of Defendant Alta Colleges, Inc.  It may be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

9.    Defendant El Nell, Inc., d/b/a Westwood College–Dallas, is a Colorado corporation doing business in Texas. It is a wholly owned subsidiary of Defendant Alta Colleges, Inc., doing business in the Northern District of Texas.  It may be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

III.

FACTS

10.    Defendants are the owners and operators of three proprietary schools in the state of Texas.  Alta Colleges offers classes in a variety of areas, including computer network engineering, software engineering, interior design, and medical assisting. In order to assist students with funding their educations at Alta Colleges, Defendants sought and obtained eligibility to participate in the Title IV, HEA programs as proprietary institutions of higher education.  In order to be deemed eligible institutions for Title IV participation, Alta Colleges was required to comply with a number of federal and state requirements.

A.    Certification and Licensing Requirements.

11.    For a student to receive a federal Pell Grant to attend a postsecondary school, like Alta Colleges, or to be eligible for a federally guaranteed student loan, the student must attend a school that is eligible to participate in the Title IV, HEA programs. For a school to be eligible to participate in Title IV, HEA programs, the school must first,

**Amended Complaint of the United States of America -- Page 5**

*as a prerequisite*, enter into a Program Participation Agreement (PPA) with the Secretary of Education, a contract in which the school agrees that its "participation is subject to the terms and conditions set forth in this Agreement." Furthermore, the participating school agrees in the PPA that it must "comply with the programs statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as ... the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668." PPA, at 2.

12.    Alta Colleges signed numerous PPA's with the Department of Education, including but not limited to, PPA's for its Texas schools dated August 14, 2000, September 24, 2001, November 13, 2002, November 6, 2003, January 16, 2006, and September 16, 2006. Just as other institutions committed to do in their PPA's, Alta Colleges promised in each PPA to comply with all program statutes and regulations.

13.    One of the federal regulations that Alta Colleges promised to comply with in the PPA requires that the school be licensed to operate in each state in which it is doing business. Specifically, the institution must be "legally authorized to provide an educational program beyond secondary education in the State in which the institution is physically located." 34 C.F.R. § 600.5(a) (4). If the school is not licensed by the state in which it is doing business, it is not eligible to participate in the Title IV, HEA program.

14.    In Texas, postsecondary proprietary schools are licensed and regulated by the Texas Workforce Commission (TWC). To operate in Texas, each proprietary school

must obtain an initial Certificate of Approval from the TWC. The application for the Certificate of Approval contains an affidavit in which the principal owners of the school must swear that the information in the application is true and correct and that "the school will be operated in compliance with this application and all legal requirements." One of the sections of the application is titled "Statements of Assurance" and one of those assurances that the owners swear that they will comply with is that the school "will not utilize erroneous or misleading advertising, either by actual statement, omission, or intimation."

15.    The Certificate of Authority, once the TWC approves the application, is valid for only one year. Each year, a proprietary school must submit an Application for Renewal of Certificate of Authority. On the renewal application, the school's director and the owner are required to swear that they "have carefully reviewed Chapter 132, Texas Education Code, Career Schools and Colleges and Texas Workforce Commission Rules." They are also further required to state that the school "is in compliance with the legal requirements for approval."

16.    Thus, in order for Alta Colleges to operate its three colleges in Texas and participate in the Title IV, HEA program, Alta Colleges certified to the DOE that it would comply with all program statutes and regulations, including, but not limited to, that it would maintain its license(s) with the TWC. To obtain and keep its Texas

license(s), Alta Colleges repeatedly certified to the TWC that it would comply with the terms of its applications and "all legal requirements."

B.    Statutory and Regulatory Requirements for Proprietary School Operations

17.    In addition to the PPA and licensing requirements, the United States and state of Texas have many regulations and "legal requirements" that the schools must comply with in its operations, including but not limited to the following:

a.    If the school advertises to obtain students, its advertising must not be misleading or erroneous, either by actual statement, omission, or intimation. TX. EDUC. CODE § 132.055(l); *see also* TX. ADMIN. CODE § 807.121(a) (no "deceptive statements in attempting to enroll students" may be made). A school's admissions representatives shall also not engage in acts or practices that have a tendency to intimidate, coerce, or mislead a prospective student into accepting an enrollment. TX. ADMIN. CODE § 807.53(7). Admissions representatives shall not give false, misleading, or deceptive information about any aspect of the school's operation, programs, completion or employment rates, job placement, or salary potential. TX. ADMIN. CODE § 807.53(5).

b.    A school must provide a prospective student with a list of known Texas postsecondary schools that accept any or all credits earned at the proprietary school in which the student is enrolling. TX. ADMIN. CODE § 807.143(d).

c.    The school must supply to students *prior to enrollment* the current rates of job placement and employment of students who have been issued a certificate of completion. TX. EDUC. CODE § 132.055(e).

d.    The school must maintain a reasonable student completion rate for each program and a minimum employment rate for program graduates in jobs related to the stated occupation, as a condition of program renewal. TX. ADMIN. CODE § 807.101. The TWC requires 60%, while the Texas Higher Education

Coordinating Board, the Texas entity responsible for approving associate's or bachelor's degree programs, requires 70%. To demonstrate the minimum level, each school is required to report its completion, employment, and placement rates to the TWC. Tx. ADMIN. CODE § 807.214(b); *see also* Tx. EDUC. CODE § 132.055(e), (o). These reports must be certified under oath as being accurate.

e.    The school must apply annually to register its representatives on forms provided by the TWC. Tx. ADMIN. CODE § 807.051(a). Representatives are under the control of the school and are deemed to be agents of the school. Tx. ADMIN. CODE § 807.051(b). The school is responsible for any representations or misrepresentations expressly made or implied by its representative. Tx. ADMIN. CODE § 807.051(b). If a student is solicited or enrolled by an unregistered representative, the student is entitled to a refund of all monies paid and a release of all obligations. Tx. ADMIN. CODE § 807.051(c). A contract signed by a prospective student as a result of a solicitation or enrollment by an unregistered representative is null and void and unenforceable. Tx. ADMIN. CODE § 807.051(c).

f.    The school shall require for admission into its programs proof of one of the following: secondary education, successful completion of one full-time academic semester at an accredited college or university or other postsecondary school, or (for certificate programs only) a proven ability to benefit by obtaining a satisfactory score on an entrance test. Tx. ADMIN. CODE § 807.142(a). Among the requirements for entrance tests are the requirements that the test may not be administered by admissions representatives and that if the student fails the test, he or she may re-take the test but only after waiting five days, unless a substantially different test is administered. Tx. ADMIN. CODE § 807.142(b).

g.    If a school has admissions representatives who enroll students off-campus, the school is required to submit to the TWC a form signed under oath stating that it has such off-campus enrollment activity. If a school does enroll students off-campus it is required to provide the enrolling student with a separate form advising the student of his or her right to rescind the enrollment agreement three business days

after signing. The separate form must be in the format specified by the TWC. TX. ADMIN. CODE § 807.144(f).

18.    Other state requirements relate to specific degree programs that a school may offer. If a postsecondary school in Texas wants to offer an associate's degree or bachelor's degree program, the school must obtain the approval of the Texas Higher Education Coordinating Board (CB) to offer the program.. TX. EDUC. CODE § 132.063; TX. ADMIN. CODE § 807.16. To obtain such approval, a school is required to inform the CB as to whether the field in which the degree program is proposed requires licensure by another state regulatory authority. If so, then the school requesting CB approval must certify that its proposed degree program meets the requirements of the particular licensing authority. To offer a degree in interior design, a school must certify to the CB that its program meets the requirements of the Texas Board of Architectural Examiners, which is the Texas agency that licenses interior designers in Texas. CB RULES AND REGULATIONS, Rule 12.41(3)(G). Alta Colleges sought CB approval for an associate degree program in interior design.

B.    Alta Colleges's Lack of Compliance With Statutes and Regulations.

19.    From 2002 through 2005, while certifying that it complied with "all legal requirements", Alta Colleges failed and refused to comply with the regulations cited above. At each time they made certifications to the DOE or to the TWC, Alta Colleges

knew they were not in compliance with the regulations and they knew they had no intention of complying.

        a.      *Alta Colleges's Misrepresentations to Prospective Students Regarding Transferability of Credits*

        20.      From 2002 through 2005, Alta Colleges violated Texas statutory and regulatory requirements that it not disseminate false, misleading, or deceptive information about any aspect of the school's operation, programs, completion or employment rates, job placement, or salary potential. TX. EDUC. CODE § 132.055(l); TX. ADMIN. CODE §§ 807.53(5); 807.121(a). Despite its knowledge of statutory and regulatory prohibitions on the dissemination of false, misleading, or deceptive information to prospective students, Alta Colleges repeatedly certified that it was not violating the statutory and regulatory prohibitions while training its recruiters to do precisely that.

        21.      Alta Colleges's recruiters were trained in a number of marketing and selling techniques which were designed to mislead prospective students and to misrepresent material facts to them, in order to entice and induce the prospective students to enroll at an Alta College. Indeed, Alta Colleges's recruiters traveled to Denver, Colorado after employment to be trained at the corporate headquarters of Alta Colleges, Inc., Alta Colleges's parent corporation. During that training, Alta Colleges's recruiters were told that if a prospective student asked whether his or her Alta College credits would transfer to another school (where a bachelor degree could be pursued), the recruiters were instructed to say "yes", or that transferability was "up to the receiving school" that the

student might want to transfer to. Alta Colleges knew that no school in the state of Texas authorized by the CB to award a bachelor's degree (see Paragraph 18) accepts credits on transfer from for-profit proprietary schools, like Alta Colleges. Moreover, Alta Colleges failed to identify any school that did accept its credits, as is required by Tx. ADMIN. CODE § 807.143(d). Therefore, these statements, that Alta Colleges's credits would transfer, or that transferability was "up to the receiving school", were false and misleading, either outright or by intimation.

22.    Alta Colleges's false representations to prospective students were material as they frequently based their decision on whether to enroll at Alta Colleges on the feasibility of their "credits" transferring to a four-year college. Alta Colleges's false representations violated the TWC requirements, the very requirements Alta Colleges certified each year it complied with.

b.    *Alta Colleges's Misrepresentations to Prospective Students Regarding Job Placement Rates*

23.    In addition to misleading prospective students regarding transferability of credits, Alta Colleges's admissions representatives were directed by management to tell prospective students that Alta Colleges's job placement rate after graduation was 99%, 97%, or more vaguely, "90-something percent." Indeed, Alta Colleges prepared scripts for telephone solicitations that included false placement rates and provided its admissions representatives with other materials that included that information. These scripts instructed the admissions representatives to say that Alta Colleges placed "99% of our

Amended Complaint of the United States of America -- Page 12

graduates in their field of study within 90 days of graduation." Representatives were told to use this placement figure even when the particular school in question was new and there was no graduating class (and it therefore had no placement rate).

24.    Furthermore, once Alta Colleges began graduating students from the Texas schools, the overall placement rate (from 2002 to 2005) at each Texas school was never 99%. Instead, the overall placement rates at all of Alta Colleges's Texas schools averaged 54.30%, and only one-third of Alta Colleges's graduates were placed in those in-field jobs through the efforts of the school. Alta Colleges's representations about placement rates were material to prospective students, as they frequently based their decision to enroll at Alta Colleges on the apparently exceptionally high probability that they would obtain a job in their field of study upon graduation and would therefore be able to repay the heavy student loan debt they were agreeing to incur by enrolling. The false representations about placement rates, which Alta Colleges trained its admissions representatives to disseminate, violated the TWC requirements, which Alta Colleges certified each year it complied with. Alta Colleges also failed to supply enrolling students with its "current" placement rates, which also violated TWC rules and regulations.

c.    *Alta Colleges's Misrepresentations Directly to the State of Texas*

25.    Alta Colleges submitted false placement reports directly to the TWC. The TWC requires postsecondary schools to report three things: the number of students who graduate from each school, the number of graduates who obtained employment in their

Amended Complaint of the United States of America -- Page 13

field, and whether the employed graduates were placed in their jobs by the school. In its report to the TWC, the school is required to list each graduate by name and social security number, state the company that employed the graduate, the graduate's position, his or her salary, and whether the school placed the graduate in that job. From these reports, the TWC compiles its placement statistics. Each school director must swear that the placement reports submitted are correct.

26.    Alta Colleges's placement reports contained materially false and misleading information, including the following:  (1) stating that the graduate was employed by a company, when he was not so employed and never had been; (2) stating that the graduate was employed by a company when the graduate had nothing more than an externship or a temporary position with the company; (3) stating that the graduate had a position "in his field", when he did not; and (4) stating that Alta Colleges had placed the graduate with the company when the graduate had found the job on his own. Numerous graduates have stated that the information Alta Colleges reported about them was incorrect and that they were not the source of the incorrect information Alta Colleges reported.  For example, one graduate was reported to be employed by "SW Estate Buyers, Los Angeles" as a photoshop technician, and that he had been placed in that job by Alta Colleges. That graduate states that he never worked for such a company and was never placed in any position by Alta Colleges. Since graduating from Alta Colleges, he returned to his previous employment as a baggage handler for an airline. Another graduate was reported

by one of the schools to be working for Carter Blood Care as a medical assistant and that she had been placed there by Alta Colleges. In fact, she had never worked for Carter Blood Care. Still another graduate was reported by Alta Colleges to be working as a technician for GT Connect, in a job Alta Colleges claimed to place him in. That graduate claims that Alta Colleges did not place him at any company and he has been unemployed since graduation.

27.    Alta Colleges's false misrepresentations on its TWC placement reports were intentional misrepresentations designed to mislead the TWC, as well as prospective students and their parents, about the school's actual placement rate.  For a number of the students on which Alta Colleges was reporting data, Alta Colleges has no documentation to support what it reported.  The lack of supporting documentation violates another TWC requirement -- Tx. ADMIN. CODE § 807.214(b)(2). Alta Colleges's certifications on these placement reports were either knowingly false certifications, or were made with deliberate ignorance or reckless disregard for the truth. In addition to submitting false data to the TWC, Alta Colleges's annual certification that it complied with TWC rules and regulations was knowingly false, as it repeatedly submitted false data to the TWC. These false reports were submitted for the academic years of 2002-03, 2003-04, and 2004-05.

       d.     *Alta Colleges's Violations of Recruiting Regulations*

28.    The TWC requires that recruiters employed by proprietary schools be registered and approved by the TWC.  Furthermore, the TWC prohibits unsupervised proprietary school recruiters from soliciting or enrolling students before their registration with the TWC is approved.  From 2002 to 2005, Alta Colleges violated the TWC regulations by requiring its admissions representatives to begin soliciting and enrolling students immediately upon their employment, despite its knowledge of the TWC prohibition of such activities.  Indeed, Alta Colleges's representatives, once they had received some training and at Alta Colleges's direction, enrolled students prior to the TWC approval of their registration and without any supervision by a registered representative.  Such actions violated TWC regulations, which Alta Colleges repeatedly certified that it complied with.

29.    Moreover, Alta Colleges certified, under oath, to the TWC that it would only enroll students on its campuses and would not enroll students off campus.  One of the owners of Alta Colleges, Inc., made these certifications to the TWC on behalf of Alta Colleges.  At the same time Alta Colleges was certifying to the TWC that it would not recruit "off-campus", Alta Colleges employed two to four "field representatives" at each campus, whose job duties were to travel to high schools and students' homes to secure students' enrollments off-campus.  Alta Colleges falsely represented that it was recruiting only on-campus. By falsely representing its enrollment activities as occurring only on campus, Alta Colleges annually misrepresented to the TWC that it complied with TWC

regulations.  This misrepresentation to the TWC caused the agency to not ask to review

Alta Colleges's separate cancellation notice form, required for any off-campus

enrollments.  TX. ADMIN. CODE § 807.144(f).  By failing to disclose its off-campus

enrollment activities, the TWC was lulled into not seeking further review of a required

notice to prospective students.

       30.     In addition to recruiting students in prohibited ways, Alta Colleges violated

TWC regulations by allowing its admissions representatives to administer an entrance

"ability to benefit" exam, known as the "Accuplacer" test, to prospective students. The

purpose of the Accuplacer test is to determine if the prospective student would benefit

from a post-secondary education before incurring the debt to pay for such education.

Because admissions representatives have a financial incentive to sign up as many students

as possible, the TWC bars admissions representatives from administering the Accuplacer

test. TX. ADMIN. CODE § 807.142(b).  Alta Colleges ignored the TWC's prohibition.

Furthermore, Alta Colleges did not require students who failed the test to wait to re-take it

(which the TWC regulations also require).  Alta Colleges also allowed students to use

their cellphones during the exam in order to call other people to obtain answers to the

questions.  All the while, Alta Colleges repeatedly falsely certified to the TWC and DOE

that it was complying with all applicable regulations and requirements and was, therefore,

eligible to participate in the Title IV, HEA program.

       e.     *Alta Colleges's Misrepresentations About Licensing Requirements to CB*

31.     The CB regulates the curriculum, or programs, proposed by all institutions of higher education in the state of Texas.  Any institutions wishing to offer an associate's degree, a bachelor's degree, or other higher graduate degree, must first obtain authority from the CB to offer the program.  To offer a bachelor's degree in the state of Texas, the CB requires that the offering institution be accredited by one of the regional accrediting associations, such as the regional Southern Association of Colleges and Schools (SACS), which have stricter standards and requirements than the national accrediting bodies.  The CB does not recognize the national accrediting bodies, such as the Accrediting Council of Independent Colleges and Schools (ACICS), which is the body that accredits Alta Colleges's schools.  The CB does not require the stricter regional accreditation for authority to offer an associate's degree; thus, Alta Colleges was able to apply for authority to offer associate's degrees.  But it cannot offer a bachelor's degree.

32.     Alta Colleges sought CB approval to offer an associate's degree in interior design.  In seeking CB approval, Alta Colleges was required to complete a form titled "Statement of Assurance."  On the form, one of the statements the institution is asked to make about its proposed program is whether "The program satisfies all requirements of relevant licensing authorities."  With respect to the interior design degree program for which Alta Colleges sought approval, Alta Colleges's program did not satisfy the requirements of the relevant licensing authorities.  Alta Colleges submitted these false statements to the CB on several dates including but not limited to June 25, 2001, April 5,

2002, January 10, 2003, February 20, 2003, and April 30, 2003. These statements were false and materially misleading. The CB would not have approved Alta Colleges's interior design program if Alta Colleges had stated that its program did not satisfy the relevant licensing requirements.

33.    For example, with respect to the interior design program, Alta Colleges knew that interior designers are required to be licensed in Texas. To become licensed, an interior designer candidate must have graduated from a program that meets certain requirements of the Texas Board of Architecture, which is the state agency that licenses interior designers. A student not graduating from such an approved program is not eligible to sit for the licensing exam. Alta Colleges misrepresented to the CB that the licensure requirements were "not applicable" to its program when they were and Alta Colleges knew that. Alta Colleges then proceeded to offer and market its interior design program to students, telling them that they could become interior designers in Texas. Instead, it was impossible for any Alta Colleges student, even after taking Alta Colleges's program, to be eligible for licensure. Thus, Alta Colleges knowingly misrepresented its program to the CB in order to obtain its approval, in addition to misrepresenting its program to the students.

C.    Financial Aid Programs.

34.    In making the multiple false certifications that it has made, Alta Colleges misled the United States into believing that it was eligible to participate in the Title IV,

HEA programs, when in fact it was not. The United States relied on Alta Colleges's state license and state program approvals that were secured through false certifications and believed as a result that Alta Colleges was eligible to participate in the Title IV, HEA programs. The TWC would not have approved Alta Colleges's annual renewals of authority to operate in Texas had it known all of the facts surrounding Alta Colleges's practices and operations.

35.    Alta Colleges receives federal funds from several different Title IV, HEA programs. One such program is the Pell Grants program, in which grants are directly paid to the school for the benefit of the student. The grants do not have to be repaid. By receiving Pell Grant money, Alta Colleges receives money directly from the federal government. When the student has completed and submitted all of the paperwork, Alta Colleges makes a direct request to the federal government to release to it the financial aid.

36.    In addition to Pell Grants, Alta Colleges received the proceeds of federally guaranteed student loans. With student loans, a qualifying student borrows money from a financial institution, but the amount borrowed is guaranteed by a guaranty agency that guarantees the lender from loss due to a borrower's default. The federal government reimburses the guaranty agency for all or part of the amount of the default claims the guaranty agency must pay to a lender on the defaulted student loan. The Department of Education tracks the default rates of each eligible institution. Alta Colleges's three Texas schools have an average default rate of 11.93%.

37.    Because Alta Colleges falsely certified that it was eligible to participate in the Title IV, HEA programs, it received federal funds in the form of Pell Grants and in the form of student loans that the United States will ultimately have to repay because of defaults. Each request by Alta Colleges for the federal grant money or guaranteed student loan money, when it was not eligible to do so, constitutes a false claim upon the United States.

IV.

CAUSES OF ACTION

A.    Violation of False Claims Act, 31 U.S.C. § 3729(a)(1).

38.    Plaintiff United States realleges and incorporates by reference the allegations contained in Paragraphs 1-37 above in this Complaint.

39.    Through the acts described above, Alta Colleges knowingly presented or caused to be presented to the United States false or fraudulent claims for payment.

40.    The United States, relying on the false certifications identified above, approved and paid financial aid to Alta Colleges in amounts that it would never have paid had the truth of Alta Colleges's actions been known.

41.    By reason of these false payments, the United States believes that it has been damaged by the amount of Title IV, HEA program funds that Alta Colleges has received at all of its schools in Texas.

B.    Violation of False Claims Act, 31 U.S.C. § 3729(a)(2).

42.     Plaintiff United States realleges and incorporates by reference the allegations contained in Paragraphs 1-37 above in this Complaint.

43.     Through the acts described above, Alta Colleges knowingly made, used, and caused to be made and used false records and statements to get false or fraudulent claims paid or approved by the United States.

44.     The United States, relying on the false records and statements made by Alta Colleges, paid financial aid to Alta Colleges in amounts that it would never have paid, had the falsity of the records and statements been known.

45.     By reason of these false payments, the United States has been damaged by the amount of Title IV, HEA program funds that Alta Colleges has received at all of its schools in Texas.

C.      Violation of False Claims Act, 31 U.S.C. § 3729(a)(3).

46.     Plaintiff United States realleges and incorporates by reference the allegations contained in Paragraphs 1-37 above in this Complaint.

47.     Alta Colleges, through its various corporate entities, officers, employees, and agents, conspired to defraud the United States by getting the Department of Education to pay the Defendants Title IV, HEA program funds. Specifically, Alta Colleges, Inc. and its subsidiaries, Elbert, Inc., Trav Corporation, and El Nell, Inc., along with their owners, officers, managers, and other employees engaged in this conspiracy by

working in concert to mislead the state agencies and to mislead the federal government in order to secure Title IV eligibility.

48.    Because of that conspiracy, the United States believes that it has been damaged by the amount of Title IV, HEA program funds that Alta Colleges has received at all of its schools in Texas.

D.    Payment by Mistake.

49.    Plaintiff United States realleges and incorporates by reference the allegations contained in Paragraphs 1-37 above in this Complaint.

50.    The allegations within this Complaint establish at a minimum, that the Department of Education paid Title IV funds to Alta Colleges under the mistake that Alta Colleges was in fact eligible and properly certified as being in compliance with all the federal and state requirements to make them eligible to receive Title IV, HEA program funds.

51.    By reason of these false certifications, the United States mistakenly paid Alta Colleges all of the Title IV, HEA program funds that it received at all of its schools in Texas.

E.    Fraudulent Inducement, Misrepresentation, and Scheme to Defraud.

52.    Plaintiff United States realleges and incorporates by reference the allegations contained in Paragraphs 1-37 above in this Complaint.

53.    The allegations within this Complaint establish at a minimum that the Department of Education was fraudulently induced to pay Title IV funds to Alta Colleges based upon misrepresentations and omissions of material facts with respect to Alta Colleges's multiple certifications that it was in compliance with all state and federal regulations.

54.    Alta Colleges made such misrepresentations and omissions intentionally with knowledge of their falsity or in deliberate ignorance or with reckless disregard for their truth, and the United States, acting in reliance on Alta Colleges's misrepresentations and omissions, made payments, to its detriment, based upon such false statements.  These misrepresentations and omissions were material and induced the United States to make Title IV payments.  Alta Colleges engaged in a scheme to defraud the United States by consistently misrepresenting its actions, policies, activities, and procedures in order to secure eligibility to participate in the Title IV, HEA programs.

55.    By reason of Alta Colleges's misrepresentations and false certifications, the United States mistakenly paid Alta Colleges all of the Title IV, HEA program funds that it received at all of its schools in Texas from 2002-2005.

F.    Unjust Enrichment.

56.    Plaintiff United States realleges and incorporates by reference the allegations contained in Paragraphs 1-37 above in this Complaint.

57.    The allegations within this Complaint establish at a minimum that the Department of Education paid Title IV funds to Alta Colleges to which Alta Colleges was not entitled, since it falsely certified it was in compliance with all state and federal requirements when it was not. Alta Colleges has therefore been unjustly enriched at the expense of the United States.

58.    By reason of these false certifications and improper and inaccurate claims and statements made to the United States, Alta Colleges has been unjustly enriched by the amount of all of the Title IV, HEA program funds that it received at all of its schools in Texas.

V.

JURY DEMAND

59.    The United States demands a jury trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff United States of America respectfully requests that this Court cause Defendants Alta Colleges, Inc., Elbert, Inc., d/b/a Westwood College–Fort Worth, Trav Corporation d/b/a Westwood College Denver North and/or Westwood College Houston South, and El Nell, Inc., d/b/a Westwood College–Dallas, to be served with summonses and to appear and answer, and that upon final hearing of this matter, that the Court enter judgment against Defendants as follows:

a.    Actual damages in an amount to be determined by the Court.

**Amended Complaint of the United States of America -- Page 25**

b.      Treble damages equal to three times the amount of the actual damages the United States has sustained as harm as a result of Alta Colleges's unlawful conduct, pursuant to 31 U.S.C. § 3729(a).

c.      Civil monetary penalties under the False Claims Act of $11,000 for each false and fraudulent claim that Alta Colleges caused to be submitted to the United States for payment. Each request for the transfer of Title IV, HEA program funds constitutes a separate transaction and false claim subject to a civil monetary penalty.

d.      All attorney's fees, expenses, and costs associated with prosecuting this civil action, pursuant to 31 U.S.C. § 3730(d).

e.      All prejudgment and postjudgment interest to which the United States is entitled to.

f.      All other relief which the Court deems proper and justified and to which the United States is entitled.

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General


JAMES T. JACKS
ACTING UNITED STATES ATTORNEY

J. Scott Hogan
Assistant United States Attorney
Texas Bar No. 24032425
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, Texas 76102-6882
Telephone: 817. 252.5271
Facsimile:  817.978.6350

Joyce R. Branda
Michael Granston
Jay Majors
Attorneys, Civil Division
Commercial Litigation Branch

ATTORNEYS FOR THE PLAINTIFF
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on this  6th  day of April, 2009, this Complaint is being served on Julie E. Johnson, counsel for Relators, at Van Wey & Johnson, L.L.P., 3100 Monticello Ave., Suite 500, Dallas, Texas 75205.

J. Scott Hogan
Assistant United States Attorney

**Amended Complaint of the United States of America -- Page 27**